IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| JOSE CASTRO,<br>*Plaintiff* | §<br>§<br>§ | |
| -vs- | §<br>§ | SA-20-CV-01022-XR |
| KIMBERLY KORY, MICHAEL THORNTON, CARL KERAWALLA, SHAWN KING,<br>*Defendants* | §<br>§<br>§<br>§<br>§ | |

## ORDER ON RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW AND MOTION FOR A NEW TRIAL

On this date, the Court considered Defendants' renewed motion for judgment as a matter of law and motion for a new trial (ECF No. 133) and Plaintiff's response (ECF No. 135). After careful consideration, the Court issues the following order.

### BACKGROUND

Plaintiff Jose Castro brought this action under 42 U.S.C. § 1983 for violations of his Fourth and Fourteenth Amendment rights arising out of his detention by four San Antonio Police Department ("SAPD") officers—Kimberly Kory, Michael Thornton, Carl Kerawalla, and Shawn King—for over an hour on the morning of August 30, 2018.

In March 2023, the Court granted summary judgment on Plaintiff's claim for wrongful seizure based on qualified immunity but denied Defendants' motion as to his remaining claims for excessive force, illegal search, failure to intervene, and unlawful prolonged seizure. *Castro v. Kory*, 662 F. Supp. 3d 702, 713 (W.D. Tex. 2023). On appeal, the Fifth Circuit reversed the Court's denial of qualified immunity for the Officers' prolonged arrest and affirmed the Court's summary judgment order in all other respects. *See Castro v. Kory*, No. 23-50268, 2024 WL 1580175 (5th Cir. Apr. 11, 2024).

In May 2025, the Court held a jury trial. After both the Plaintiff's case in chief and the close of trial, Defendants made a Rule 50(a) Motion for Judgment as a Matter of Law based under both prongs of the qualified immunity defense (i.e., that Plaintiff had not shown a constitutional violation and that their actions were not objectively unreasonable based on established law). The Court granted the motion as to Plaintiff's excessive force claims for his removal from the truck and handcuffing (and struck Plaintiff's medical expenses) but denied the motion in all other respects.

Thereafter, Plaintiff moved to strike Defendants' only witness, Commander Albert Rodriguez, a substitute for a previous law enforcement expert who suffered a health crisis before trial. *See* ECF No. 96; Text Order (Apr. 22, 2025). Commander Rodriguez intended to testify that King was justified in pointing his firearm at Plaintiff based on Kory's statement to "watch his [Plaintiff's] hands." *See* ECF No. 133 at 2, 5. Because that opinion had not been disclosed in the original expert's report, however, the Court granted Plaintiff's motion to strike Commander Rodriguez's testimony.

The jury found Defendants King and Kerawalla liable for using excessive force for aiming their firearms at Plaintiff, found King, Kerawalla, and Thornton liable for illegally searching Plaintiff's vehicle, and found Thornton liable for failing to intervene. ECF No. 127. The jury awarded $145,000 in compensatory damages and an additional $120,000 in punitive damages. *Id.*; *see also* ECF No. 128 (Final Judgment).

Defendants Kerawalla, King, and Thornton have filed a renewed motion for judgment as a matter of law under Rule 50(b) and a motion for new trial under Rule 59. *See* ECF No. 133.

In their motion for judgment as a matter of law, Defendants argue (1) that, as a matter of law, pointing a weapon at Plaintiff's head under these circumstances cannot be excessive force,

(2) that there is no evidence of malice that would support the jury's award of punitive damages, and (3) that there is no evidence that Plaintiff suffered any compensatory damages.

In their motion for new trial, Defendants argue that they were denied their opportunity to claim qualified immunity (1) because the Court struck their liability expert and (2) because the Court supposedly did not give the proper jury instructions regarding qualified immunity. Defendants also argue that the Court committed a reversible error in admitting the post-arrest body camera footage. The Court addresses each motion in turn.

## DISCUSSION

### I. Defendant's Renewed Motion for Judgment as a Matter of Law

#### A. Legal Standard

Motions for judgment as a matter of law are governed by Federal Rule of Civil Procedure 50, which provides in relevant part:

> If a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue, the court may (A) resolve the issue against the party; and (B) grant a motion for judgment as a matter of law against the party on a claim . . . that . . . can be maintained or defeated only with a favorable finding on that issue.

FED. R. CIV. P. 50(a)(1). If a party makes a motion for judgment as a matter of law during trial, but the court does not grant the motion, the moving party may renew its motion no later than twenty-eight days after the entry of judgment. FED. R. CIV. P. 50(b). A court considering a such a motion may (1) allow judgment on the verdict; if the jury returned a verdict, (2) order a new trial; or (3) direct the entry of judgment as a matter of law. FED. R. CIV. P. 50(b).

In considering a Rule 50(b) motion for judgment as a matter of law following a jury verdict, the court must be "especially deferential" to the jury's findings. *SMI Owen Steel Co., Inc. v. Marsh USA, Inc.*, 520 F.3d 432, 437 (5th Cir. 2008). It should "consider all of the evidence, drawing all

reasonable inferences and resolving all credibility determinations in the light most favorable to the non-moving party." *Baisden v. I'm Ready Prods., Inc.*, 693 F.3d 491, 498 (5th Cir. 2012); *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000) ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.").

A court must deny a motion for judgment as a matter of law "unless the facts and inferences point so strongly and overwhelmingly in the movant's favor that reasonable jurors could not reach a contrary conclusion." *Baisden*, 693 F.3d at 498 (quoting *Flowers v. S. Reg'l Physician Servs. Inc.*, 247 F.3d 229, 235 (5th Cir. 2001)). In deciding a Rule 50(b) motion, even if the court would reach a different conclusion as the trier of fact, the court is "not free to reweigh the evidence or to re-evaluate credibility of witnesses." *Brown v. Kinney Shoe Corp.*, 237 F.3d 556, 564 (5th Cir. 2001) (quoting *Hiltgen v. Sumrall*, 47 F.3d 695, 699 (5th Cir. 1995)). In short, "[u]nless there was no credible evidence presented which might authorize the verdict, the jury's findings must stand." *Urban Developers LLC v. City of Jackson*, 468 F.3d 281, 297 (5th Cir. 2006) (internal quotations omitted) (quoting *Ham Marine, Inc. v. Dresser Indus., Inc.*, 72 F.3d 454, 461 (5th Cir. 1995)).

**B.    Analysis**

**1.    Whether Pointing a Firearm at Plaintiff was Constitutional**

Defendants' argument that pointing a firearm at Plaintiff was constitutional as a matter of law (1) contradicts the Fifth Circuit's previous ruling in this case and (2) relies on excessive-force cases requiring a "serious injury" before the Supreme Court eliminated that requirement in *Hudson v. McMillan,* 503 U.S. 1, 4 (1992) and other factually distinguishable cases.

The Fifth Circuit already concluded that "Castro has made a showing of injuries resulting directly from excessive, unreasonable force, which *if proved at trial*, can qualify as a violation of

4

his protected constitutional rights." *Castro*, 2024 WL 1580175, at *4 (emphasis added). As the panel explained:

> [T]he officers had no probable cause to suspect Castro of a crime beyond his initial resistance to police commands. Nor did the officers reasonably believe Castro to be a genuine threat to their safety. Although Castro initially pulled away from the officers and flailed his arms in defense while they removed him from his vehicle, *the force used by the officers, particularly pointing a gun at his head, was clearly disproportionate* to Castro's resistance, which did not endanger the police.

*Id.* (emphasis added) (citing *Petta v. Rivera*, 143 F.3d 895, 900–03 (5th Cir. 1998).

> There can be no question that the right at issue here, i.e., freedom from excessive force, is clearly established. Although we have previously held in some cases that pointing a gun at a suspect does not rise to the level of a constitutional violation, *this case is not the case*. *Hinojosa v. City of Terrell*, 834 F.2d 1223, 1230–31 (5th Cir. 1988). Here, the officers pointed multiple guns throughout the encounter at an unarmed, confused, and only mildly disruptive suspect. To the point, the district court correctly denied the police claim of qualified immunity on Castro's excessive force claim.

*Id.* at *4.

Defendants do not identify any developments in the law that would allow the Court to depart from the Fifth Circuit's ruling. The law-of-the-case doctrine generally provides that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case. *Musacchio v. United States*, 136 S. Ct 709, 716 (2016) (quoting *Pepper v. United States*, 562 U.S. 476, 506 (2011)) (quotation marks omitted). Indeed, in support of their Rule 50(b) motion, Defendants cite *Hinjosa*—the very case the Fifth Circuit found inapposite in its summary judgment ruling—and four other readily distinguishable cases. ECF No. 133 (citing *Dunn v. Denk*, 79 F.3d 401(5th Cir. 1996) (en banc); *Brothers v. Zoss*, 837 F.3d 513 (5th Cir. 2016); *Crane v. City of Arlington*, 50 F.4th 453 (5th Cir. 2022); *Ferguson v. Dunn*, No. 1:16-CV-272, 2018 WL 2656990, at *1 (E.D. Tex. Apr. 27, 2018), *adopted*, 2018 WL 2670673 (June 1, 2018), *aff'd*, 803 F. App'x 808 (5th Cir. 2020)).

5

In *Hinojosa*, the Fifth Circuit reversed a jury's finding of a constitutionally excessive force in a confrontation in which the defendant police officer drew his gun and pointed it at the plaintiff's face. *See* 834 F.2d at 1224–26. Officers had been called to respond to a fistfight between two patrons at the plaintiff's pool hall. After the patrons had been arrested, an officer began beating another customer. When the plaintiff sought to intervene, the defendant pointed his service revolver at him. The Fifth Circuit was "unwilling to say that merely pointing the gun was grossly disproportionate to the need for action under these circumstances." *Id.* at 1230–31.

It's worth noting that *Hinojosa* was decided before the Supreme Court's decision in *Hudson,* 503 U.S. at 4, "which eliminated the requirement of a 'serious injury' in order to prevail in an excessive use of force action." *Manis v. Cohen*, No. CIV.A.3:00CV1955-P, 2001 WL 1524434, at *8 (N.D. Tex. Nov. 28, 2001). Thus, the *Hinojosa* Court held that the plaintiff's excessive force claim was non-cognizable because his "temporary emotional distress" from having a gun pointed at him did not constitute a meaningful injury, as was then required under *Shillingford v. Holmes*, 634 F .2d 263, 265 (5th Cir. 1981).

Based on this change in law, in *Dunn v. Denk*, 79 F.3d 401, the Fifth Circuit reversed a jury verdict for the plaintiff who had suffered mostly psychological damage during a pre-*Hudson* police encounter.[1] The jury awarded $10,000 in punitive damages but no compensatory damages. On rehearing en banc, the Fifth Circuit reversed the punitive damages award and held that the officer was entitled to qualified immunity "because it was not clearly established at the time of the incident . . . that a non-physical injury, without significant physical injury" was cognizable under

---

[1] In the process of ticketing the plaintiff for failing to wear her seatbelt, the defendant officer discovered a warrant relating to a speeding ticket. In the subsequent arrest, the officer pulled the plaintiff from the car, throwing her face down into a ditch by the side of the road, handcuffed her with the knee in the small of her back, pulled her up by her arms, and placed her in his squad car. The plaintiff, on a weekend pass from a mental hospital, "suffered only bruises but her psychological injury was substantial." *Dunn v. Denk*, 54 F.3d 248 (5th Cir. 1995).

Section 1983. 79 F.3d at 404 (Barksdale, J., concurring). *Dunn*'s reasoning is inapposite here, given that by August 2018, it had been clearly established for over 20 years that a psychological injury can support an excessive force claim.

Defendants' remaining cases are equally unpersuasive. In *Brothers v. Zoss*, officers responded to a call from a bar security guard requesting police assistance to prevent a heavily intoxicated patron from driving under the influence. The Fifth Circuit held that it was not unreasonable for officers to draw their guns to prevent the patron, sitting in his truck with the engine running, from driving away, which would have presented a danger to the officers and the public. 837 F.3d at 519. The Defendants in this case had no reason to believe that Castro posed a similar threat. *See Flores v. Rivas*, No. EP-18-CV-297-KC, 2020 WL 563799, at *7 (W.D. Tex. Jan. 31, 2020) (distinguishing *Brothers* on the same ground).

Defendants also point to *Crane v. City of Armstrong*, in which the Fifth Circuit affirmed an order granting qualified immunity to an officer who pointed his firearm at passengers of a car as he climbed over them to reach the driver, who had multiple outstanding warrants and repeatedly refused to shut off the engine or exit the vehicle. *Crane*, 50 F.4th at 459–60, 468. The panel reasoned that "there was no unreasonable use of force against the passengers, so no constitutional injury occurred." *Id.* at 468 ("We previously held that pointing a gun can be reasonable given the circumstances, and that 'the momentary fear experienced by the plaintiff when a police officer pointed a gun at him did not rise to the level of a constitutional violation[.]'") (citing *Hinojosa*, 834 at 1230–31, and quoting *Dunn*, 54 F.3d at 250). The fear that the passengers suffered in *Crane* when the officer's firearm was momentarily (and incidentally) pointed in their direction is simply too dissimilar to Plaintiff's experience—having multiple firearms aimed directly (and intentionally) at his head for several minutes—to provide a meaningful comparison.

7

Finally, in *Ferguson*, an officer stopped the plaintiff for failure to wear his seatbelt properly and attempted for approximately 40 minutes to persuade the plaintiff to identify himself and exit the vehicle. 2018 WL 2656990, at *2; *see also id.* at *10 (noting that "curtains in the vehicle's windows made it difficult to ascertain if Ferguson had any weapons or other individuals in the car"). After speaking with his supervisor, the officer breached the plaintiff's window to arrest the plaintiff. Another officer assisted in the arrest by pointing a rifle at the plaintiff for less than one minute. The district court adopted the magistrate judge's recommendation to dismiss the plaintiff's excessive force claim because he "ha[d] not sufficiently alleged that . . . pointing a rifle at [the plaintiff] for less than one minute was 'clearly excessive.'" *Id.* at *9.

In this case, Kerawalla had his personal AR-15 trained on Plaintiff's head within minutes of the Officers' "ghost call," despite noting that Plaintiff was holding his phone in one hand and the other was empty. *Castro*, 662 F. Supp. 3d at 710–11. Similarly, when King arrived at the scene, he approached Plaintiff's truck with his firearm drawn. *Id.* at 711. Minutes later, as the other Officers pulled Castro from his truck, King pointed his firearm-mounted light into the cab, putting the muzzle approximately two feet from Castro's face. *Id.*

In short, by August 2018, it was well established that it is "objectively unreasonable for a police officer to forcefully brandish a deadly weapon at citizens whom he could not reasonably have perceived to be dangerous." *Flores*, 2020 WL 563799, at *7 (citing *Hodge v. Layrisson*, No. 97-cv-555, 1998 WL 564263, at *6 (E.D. La. Sept. 1, 1998)). Other than their mere disagreement with the law, Defendants have offered no reason to disturb the jury's verdict on Plaintiff's excessive force claims. The jury made its determination, and the Court owes special deference to that determination. *See SMI*, 520 F.3d at 437.

### 2. Evidence of Malice

Defendants argue that they are entitled to judgment as a matter of law on the punitive damages issue because there supposedly was "no evidence of malice" that could support an award of punitive damages. ECF No. 133 at 8–9.

Punitive damages may be awarded in Section 1983 cases "when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Smith v. Wade*, 461 U.S. 30, 56 (1983). Reckless indifference has been described by the Supreme Court as "'subjective consciousness' of a risk of injury or illegality.'" *Kolstad v. Am. Dental Ass'n*, 527 U.S. 526, 536 (1999) (citation omitted). "Punitive damages in § 1983 actions are designed not only to deter the official in question from future unlawful conduct, but also to deter those other officials who are similarly situated." *Holmes v. Reddoch*, 117 F.4th 309, 320 (5th Cir. 2024) (citing *Cowart v. Erwin*, 837 F.3d 444, 456 (5th Cir. 2016)). "[T]he 'discretionary moral judgment' of whether to award punitive damages when the legal threshold is met belongs to the jury, not this court." *Cowart*, 837 F.3d at 456 (quoting *Smith*, 461 U.S. at 56).

The Fifth Circuit Pattern Jury Instructions provide: "One acts with malice when one purposefully or knowingly violates another's rights or safety. One acts with reckless indifference to the rights of others when one's conduct, under the circumstances, manifests a complete lack of concern for the rights or safety of another." Pattern Civ. Jury Instr. 5th Cir. 15.7 (2024) (emphasis added). The Instructions further direct a jury awarding punitive damages to consider "the reprehensibility of [the] conduct, including but not limited to whether there was *deceit*, *cover-up*, *insult*, intended or reckless injury." *Id.*

Defendants do not explain the basis for their argument that there is no evidence of malice, nor do they offer any citations to the record to substantiate that position. *See* ECF No. 133 at 8–9. In any event, Plaintiff points to ample evidence and trial testimony from which a reasonable jury could properly conclude that King, Kerawalla, and Thornton's conduct involved reckless or callous indifference to Plaintiff's federally protected rights. *Smith*, 461 U.S. at 56.

To begin, Plaintiff's expert and Defendants themselves agreed that pointing a gun at Plaintiff under these circumstances was extremely dangerous. Defendants testified that they were aware of the SAPD policies stating that they were never supposed to point a gun at anything they were not willing to destroy. *See also* PEX 9A (Kerawalla acknowledging to Sergeant Garcia that he "broke regs on this one"). A reasonable jury could have concluded that Kerawalla and King manifested "a complete lack of concern" for Plaintiff's safety and his right to be free from constitutionally excessive force. Pattern Civ. Jury Instr. 5th Cir. 15.7 (2024).

Moreover, a reasonable jury could have concluded that the Officers were motivated by an animus toward Plaintiff for failing to immediately comply with their orders rather than any fear for their safety. *See* PEX 1A (Kerawalla boasting to Kory that he could have easily killed Plaintiff and that he would have "drilled" Plaintiff if he had moved the wrong way); PEX 2C ( "You chose to make a stand against the San Antonio Police Department, and that's the wrong department to make a stand against."); PEX 2E (explaining that Plaintiff did not do "what they say, when they say it and how they say it").

Defendants also repeatedly muted their body cameras during the encounter. While SAPD policy purportedly allows officers to mute recordings to discuss strategy, a reasonable jury could conclude that the Defendants muted their microphones while they developed a plan to retroactively justify their force by illegally searching Plaintiff's vehicle, hoping that it would provide some basis

10

for an arrest. Both Kerawalla and Thornton expressed disappointment when their search did not yield any incriminating evidence. *See* PEX 9B (Kerawalla: "Damn it–can't I get something?").

Furthermore, a reasonable jury could conclude the Officers' search of the truck constituted, "callous indifference" to Plaintiff's Fourth Amendment rights. The Officers had neither a warrant nor probable cause to believe that the vehicle contained incriminating evidence. Still, they conducted an evidentiary search—even deploying a K-9 unit—and did not even *pretend* that they were conducting an inventory search (by, e.g., recording the contents of the vehicle).

Defendants are not entitled to judgment as a matter of law on the jury's award of punitive damages.

### 3. Evidence of Compensatory Damages

Defendants' argument that "there is no evidence that Plaintiff sustained any damages for the allegations of excessive force concerning the pointing of a weapon" has been waived because it was not raised before the judgment was signed—either in Defendants' Rule 50(a) motion after Plaintiff's case in chief or their renewed motion after the close of all evidence. Nor did Defendants challenge the Court's jury instructions or special interrogatory addressing compensatory damages.

Rule 50(b) only allows a party to renew objections made before the jury verdict, not to raise new arguments that could have been raised before the verdict under Rule 50(a). As the Fifth Circuit has explained:

> It is well-settled in this circuit that a motion for judgment as a matter of law filed post verdict cannot assert a ground that was not included in the motion for judgment as a matter of law made at the close of the evidence. *See Allied Bank–West, N.A. v. Stein*, 996 F.2d 111, 115 (5th Cir. 1993) (explaining that under Rule 50, a motion for directed verdict is a prerequisite and "virtually jurisdictional" so that a motion for JNOV cannot assert a ground that was not included in the motion for directed verdict). *See also Perricone v. Kansas City Southern Ry. Co.*, 704 F.2d 1376, 1380 (5th Cir. 1983). In *Sulmeyer v. Coca Cola Co.*, 515 F.2d 835, 846 n.17 (5th Cir. 1975), this court explained that "[i]t would be a constitutionally impermissible re-

11

> examination of the jury's verdict for the district court to enter judgment n.o.v. on a ground not raised in the motion for directed verdict."

*Brown v. Bryan County*, 219 F.3d 450, 466–67 (5th Cir. 2000) (quoting *Morante v. Am. Gen'l Fin. Ctr.*, 157 F.3d 1006, 1009 (5th Cir. 1998). Defendants waived their challenge to Plaintiff's claim for compensatory damages by failing to raise it before the jury issued its verdict.[2]

## II. Defendant's Motion for a New Trial

### A. Legal Standard

"The court may, on motion, grant a new trial on all or some of the issues." FED. R. CIV. P. 59(a)(1). "A new trial may be granted, for example, if the district court finds the verdict is against the weight of the evidence, the damages awarded are excessive, the trial was unfair, or prejudicial error was committed in its course." *Smith v. Transworld Drilling Co.*, 773 F.2d 610, 613 (5th Cir. 1985). "While the court is to respect the jury's collective wisdom and must not simply substitute its opinion for the jury's, '[i]f the trial judge is not satisfied with the verdict of a jury, he has the right—and indeed the duty—to set the verdict aside and order a new trial.'" *Id.* (quoting C. Wright, Federal Courts 634 (4th ed. 1983)). In ruling on a motion for new trial, the jury's verdict may not be lightly set aside. *Ellis v. Weasler Eng'g, Inc.*, 258 F.3d 326, 343 (5th Cir. 2001).

### B. Analysis

Defendants seek a new trial on the basis that they were denied an opportunity to adequately present a qualified immunity defense due to (1) the Court's order striking their liability expert and (2) purported deficiencies in the jury instructions. They further assert that the Court committed reversible error in admitting the post-arrest body camera footage.

---

[2] Even if Defendants had raised this argument in their Rule 50(a) motion, the Court would have submitted the question to the jury, given Plaintiff's testimony concerning the mental anguish he suffered in the ten minutes when the Defendants were pointing a gun at his head. *See* ECF No. 135 at 10–11.

### 1. Stricken Expert Testimony

After dismissing Plaintiff's excessive-force claims based on his extraction from his truck and handcuffing under Rule 50(a), the Court excluded Defendants' only witness, Albert Rodriguez, from testifying as to the reasonableness of the officers' use of force in pointing their weapons at Plaintiff. The Court excluded Mr. Rodriguez's proposed testimony because (1) it appeared to contain conclusions of law; and (2) the basis for his opinion was not explained in the report submitted by the Defendants' original law enforcement expert, James R. Holguin.

A few weeks before trial, Defendants moved to substitute Mr. Rodriguez as their new liability expert because Mr. Holguin was ill. ECF No. 96. The Court allowed the substitution over Plaintiff's objection, explaining that "[t]he purpose of the substitution is to put Defendants in the same position they would have been in but-for their Mr. Holguin's medical issues." Text Order (Apr. 22, 2025) (citing *Am. Can! v. Arch Ins. Co.*, No. 3:20-CV-0850-X-BH, 2022 WL 1467424, at *3 (N.D. Tex. Apr. 6, 2022)). To ensure that the substitution would not prejudice Plaintiff, the Court stated that Mr. Rodriguez's testimony would be limited to the parameters of Mr. Holguin's original report and the constraints imposed by the Court's summary judgment and *Daubert* rulings. *See id.*

Before trial, the Court granted Plaintiff's motion to exclude Mr. Holguin's opinion that Plaintiff was parked in a high crime area because Mr. Holguin was merely parroting Defendants' statements on that point. *See Castro*, 662 F. Supp. 3d at 716. The Court also warned that some or all of Mr. Holguin's other opinions were likely to be excluded stating:

> [M]uch of Holguin's proposed testimony in Defendants' expert designations appears to be inadmissible. For example, his opinions that the Officers "had reasonable suspicion" and "used reasonable force" . . . constitute inadmissible legal conclusions that invade the province of the Court and do not assist the trier of fact.

> Similarly, much of the proposed testimony appears to merely summarize the contents of the video recordings of the incident. *See, e.g.*, ECF No. 39 at 3 ("Expert witness will testify that the Defendant officers approached an Enterprise Box truck with a driver's side door open and gave verbal commands and identified themselves as San Antonio Police Officers multiple times."). A number of courts addressing expert testimony on video recordings have concluded that the expert should not be permitted to interpret the video's contents where the expert is no better suited than a lay person to do so. Such testimony will only be admissible at trial insofar as it draws on the video footage for factual support for his opinions.

*Id.* at 716–17 (citations omitted).

At trial, defense counsel explained that Mr. Rodriguez intended to testify that the officers who pointed their firearms at Plaintiff satisfied the standard of care. Specifically, defense counsel pointed to Kory's call to "watch his hands," at which point King drew his service weapon for a period of four seconds on Plaintiff until his hands became visible. *See* ECF No. 133 at 2, 5. Defense counsel argued that officers are trained by the Texas Commission on Law Enforcement ("TCOLE") that "the hands are what can kill you." *Id.* at 11. But neither Mr. Rodriguez's opinion—that aiming a firearm at Plaintiff was reasonable—nor the purported basis for that opinion—specific TCOLE training about the visibility of a suspect's hands—appeared in Mr. Holguin's original report. *See* ECF No. 58-3. Accordingly, the Court excluded Mr. Rodriguez's proposed testimony as prejudicial to Plaintiff. And, of course, without being able to describe the *basis* for his novel opinion, Mr. Rodriguez's testimony could offer only impermissible legal conclusions supported by his own *ipse dixit*. *See Snap-Drape, Inc. v. C.I.R.*, 98 F.3d 194, 198 (5th Cir. 1996) (experts may not render conclusions of law); *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997) (district court need not admit opinion evidence that is connected to existing data only by ipse dixit of the expert).

Defendants are not entitled to a new trial based on the Court's exclusion of their expert witness. *See, e.g.*, *Watkins v. Telsmith Inc.*, 121 F.3d 984, 988 (5th Cir. 1997) ("District courts

enjoy wide latitude in determining the admissibility of expert testimony, and the discretion of the trial judge and his or her decision will not be disturbed on appeal unless manifestly erroneous").

### 2. The Jury Charge

Defendants argue that the Court erred by refusing to submit a qualified immunity instruction on Plaintiff's excessive-force claim or on the warrantless inventory search exception under *South Dakota v. Opperman*, 428 U.S. 364, 368 (1976). ECF No. 133 at 10–13. The Court delivered instructions on the substantive standards for Plaintiff's excessive-force and illegal-search claims consistent with Fifth Circuit Pattern Jury Instruction 10.1. *See* ECF No. 119 at 6–9.

#### a. Qualified Immunity Instruction

The Fifth Circuit recently explained that an officer asserting a qualified immunity defense is not entitled to a jury instruction addressing the second prong of qualified immunity:

> Although the qualified immunity defense is often decided long before trial, "if . . . there remain *disputed issues of material fact* relative to immunity, the jury, properly instructed, may decide the question." *Snyder v. Trepagnier*, 142 F.3d 791, 800 (5th Cir. 1998) (internal citation and quotation marks omitted) (emphasis added). The jury decides the *factual* question of whether the officer violated the plaintiff's rights—the first step of the qualified immunity analysis." *It* does not decide the *purely legal question* of whether the officer's actions were objectively reasonable in light of clearly established law—the second step. *See Brown v. Callahan*, 623 F.3d at 253 ("Whether an official's conduct was objectively reasonable is a question of law for the court, not a matter of fact for the jury."))[.]

*Ramirez v. Killian*, 113 F.4th 415, 429–30 (5th Cir. 2024). The *Ramirez* Court went on to explain that this "second step" often occurs at summary judgment:

> In denying a motion for summary judgment on qualified immunity grounds, as happened here, "the trial court makes two determinations. First, it decides that a certain course of conduct would, as a matter of law, be objectively unreasonable in light of clearly established law. Second, the court decides that a genuine issue of fact exists regarding whether the defendant(s) did, in fact, engage in such conduct." *Brothers v. Zoss*, 837 F.3d 513, 517 (5th Cir. 2016) (internal citation and quotation marks omitted). In other words, *when a plaintiff's claim survives the defendant's qualified immunity defense at*

15

> *summary judgment and proceeds to trial, there has already been, necessarily, a judicial determination as to the second qualified immunity step.* In this situation the trial court has held that, assuming that the plaintiff's version of the facts is true, the defendant would not be entitled to qualified immunity. *The question at trial is then solely one of fact.* The jury requires no additional "reasonable officer evidence" to deny qualified immunity.
>
> The unreasonable-seizure claim made it to the jury. The jury delivered a verdict in favor of [the plaintiffs]. That should have ended the matter.

*Id.* at 430 (emphasis added).

Here, too, both the Court and the Fifth Circuit considered and rejected Defendants' qualified immunity defense. In reaching this conclusion, the Court necessarily determined that if Defendants pointed a gun at Plaintiff's head in a way that was objectively unreasonable, as alleged by Plaintiff, Defendants would not be entitled to qualified immunity. The question of whether Defendants' conduct violated Plaintiff's constitutional right was a jury question, but the question of whether Defendants' conduct was objectively unreasonable in light of clearly established law was a question of law for the Court.[3] Plaintiff's claims that the Officers used excessive force by pointing their guns at him (and his illegal-search and failure-to-intervene claims) made it to the jury. The jury delivered a verdict for Plaintiff. That ends the matter. *Ramirez*, 113 F.4th at 430.

---

[3] The Fifth Circuit Pattern Jury Instructions acknowledge that "[i]nstructing a jury on qualified immunity can present difficult—and often fact-based—decisions for the court." Pattern Civ. Jury Instr. 5th Cir. 10.3 n.1 (2024). While "[t]he qualified-immunity issue ordinarily should be decided by the court long before trial[,] . . . if the issue is not decided until trial the defense goes to the jury which must then determine the objective legal reasonableness of the officers' conduct. In most cases in which qualified immunity remains an issue at trial, the court will have found some underlying factual dispute that precluded a pretrial ruling." *Id.* (citations and quotation marks omitted).

Had there been any outstanding factual questions that needed to be answered before the Court could resolve the qualified immunity question, Defendants could have requested a special interrogatory to addressing that factual question. Instead, Defendants merely proposed a generic interrogatory asking, "Do you find from a preponderance of the evidence that individual officer named below, use of force was objectively unreasonable in light of the facts and circumstances at the time on August 30, 2018?" *See* ECF No. 103-22.

### b. Warrantless Inventory Search Exception

Defendants assert that the Court erred by rejecting their proposed jury instruction on the inventory-search exception to the warrant requirement under *South Dakota v. Opperman*, 428 U.S. 364, 368 (1976). ECF No. 133 at 13; *see* ECF No. 103-21 at 10–11 (Proposed Jury Instruction).

But the Fifth Circuit has already rejected this defense in this case based on the limited conditions in which the inventory exception applies:

> The Fourth Amendment . . . may permit warrantless inventory searches in which automobiles are impounded and their contents are inventoried. *South Dakota v. Opperman*, 428 U.S. 364, 368–70 (1976); *see also United States v. Andrews*, 22 F.3d 1328, 1334 (5th Cir. 1994). Inventory searches do not, however, circumvent the warrant requirement if they are evidentiary in nature rather than for a caretaking function of the impounded vehicle and/or its contents. *Florida v. Wells*, 495 U.S. 1, 4–5 (1990); *United States v. Como*, 53 F.3d 87, 92 (5th Cir. 1995) (quoting *Andrews*, 22 F.3d at 1336).

*See Castro*, 2024 WL 1580175, at *4. The panel held that the exception was inapplicable here because "[c]ircumstances . . . show that [the] search [of Castro's vehicle] was *for evidentiary purposes* rather than for inventory purposes: (1) the officers created no log or inventory of items searched or located in Castro's truck; (2) Thornton radioed for a K-9 unit to search Castro's truck for narcotics; and (3) the officers never actually impounded Castro's truck." (emphasis added). *Id.*, 2024 WL 1580175, at *4.

Defendants are not entitled to a new trial based on the Court's failure to include an instruction on the inventory exception to the warrant requirement.

### 3. Admission of Post-Arrest Body Camera Footage

Defendants do not explain how the admission of the challenged footage was unfairly prejudicial under Rule 403 of the Federal Rules of Evidence, and the Court declines to make those arguments for them. *See* ECF No. 133 at 13–14; *see also* ECF No. 135 at 17 ("Defendants have

not referenced a single statement or image on the body camera footage that they believe is unfairly prejudicial.").

Plaintiff nonetheless point out that the post-arrest footage "provided evidence relevant to many important issues in this case":

> *Did the police ever feel threatened by Plaintiff?* We know they did not, in part, because the body camera footage captures admissions from the Defendants stating that Plaintiff never verbally or physically threatened them. *Did the Defendants know that they were doing wrong?* We know that the answer was yes, in part, because the body camera footage captures statements indicating such, including the statement by Officer Kerawalla that he "broke regs on this one". (Plaintiff's Ex. 9A). *Were the Officers conducting an inventory search of Plaintiff's truck, or were they looking for incriminating evidence?* We know it was an evidentiary search, in part, because the body-camera footage captures the Defendants talking about the search in evidentiary terms. *Did Defendants have any animus/malice towards Plaintiff?* We know that they did for several reasons, including many of the statements captured on the body camera footage. *Did Plaintiff suffer severe emotional distress before and after he was arrested?* We know that he did, in part, because the body camera footage captures the distress in his voice and his tears when he was explaining how it felt to have guns pointed at his head. *Additionally, the body camera footage helped the jury evaluate the credibility of the witnesses.*

ECF No. 135 at 17–18 (emphasis added).

In short, Defendants have not shown that they are entitled to a new trial under Rule 59.

## CONCLUSION

For the foregoing reasons, Defendants' renewed motion for judgment as a matter of law under Rule 50(b) and motion for a new trial under Rule 59 (ECF No. 133) are **DENIED**.

It is so **ORDERED**.

**SIGNED** this 24th day of November, 2025.

_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE