**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| JOSE CASTRO, | § | |
| *Plaintiff* | § | |
| | § | |
| -vs- | § | SA-20-CV-01022-XR |
| | § | |
| KIMBERLY KORY, MICHAEL | § | |
| THORNTON, CARL KERAWALLA, | § | |
| SHAWN KING,  UNKNOWN SAN | § | |
| ANTONIO POLICE OFFICER(S), | § | |
| *Defendants* | § | |

<u>**ORDER ON MOTION FOR ATTORNEYS' FEES**</u>

On this date, the Court considered Plaintiff's motion for attorneys' fees (ECF No. 129), Defendants' response (ECF No. 132), and Plaintiff's reply (ECF No. 136). After careful consideration, the Court issues the following order.

**BACKGROUND**

Plaintiff Jose Castro brought this action under 42 U.S.C. § 1983 for violations of his Fourth and Fourteenth Amendment rights arising out of his detention by four San Antonio Police Department ("SAPD") officers—Kimberly Kory, Michael Thornton, Carl Kerawalla, and Shawn King—for over an hour on the morning of August 30, 2018.

In March 2023, the Court granted summary judgment on Plaintiff's claim for wrongful seizure based on qualified immunity but denied Defendants' motion as to his remaining claims for excessive force, illegal search, failure to intervene, and unlawful prolonged seizure. *Castro v. Kory*, 662 F. Supp. 3d 702, 713 (W.D. Tex. 2023). On appeal, the Fifth Circuit reversed the Court's denial of qualified immunity for the Officers' prolonged arrest and affirmed the Court's summary judgment order in all other respects. *See Castro v. Kory*, No. 23-50268, 2024 WL 1580175 (5th Cir. Apr. 11, 2024).

In May 2025, the Court held a jury trial. After both the Plaintiff's case in chief and the close of trial, Defendants made a Rule 50(a) Motion for Judgment as a Matter of Law based under both prongs of the qualified immunity defense (i.e., that Plaintiff had not demonstrated a constitutional violation and that their actions were not objectively unreasonable based on established law). The Court granted the motion as to Plaintiff's excessive force claims for his removal from the truck and handcuffing (and struck Plaintiff's medical expenses) but denied the motion in all other respects.

After a four-day trial, the jury found (1) Defendants King and Kerawalla liable for using excessive force, (2) Officers King, Kerawalla, and Thornton liable for illegally searching Plaintiff's vehicle, and (3) Thornton liable for conducting an illegal search and failing to intervene. ECF No. 127. The jury awarded $145,000 in compensatory damages and an additional $120,000 in punitive damages. *Id.*; *see also* ECF No. 128 (Final Judgment). On May 23, 2025, the Court entered a final judgment reflecting the jury's verdict. *See* ECF No. 128.[1]

As the prevailing party in a civil rights suit under 42 U.S.C. § 1983, Plaintiff is entitled to reasonable attorneys' fees. *See* 42 U.S.C. § 1988(b). Plaintiff timely moved for attorneys' fees and seeks a total of $674,773.00. ECF No. 129. Defendants oppose the amount of fees sought, arguing that both the requested hourly rates and the number of hours billed are unreasonable. ECF No. 132.

---

[1] After trial, Defendants renewed their motion for judgment as a matter of law and moved for a new trial. *See* ECF No. 133. In November 2025, the Court denied both motions in all respects. *See* ECF No. 137. Defendants filed a notice of appeal on December 19, 2025. *See* ECF No. 138. Although this case is on appeal, a district court retains jurisdiction to resolve motions for attorneys' fees while a judgment on the merits is pending on appeal. *Procter & Gamble Co. v. Amway Corp.*, 280 F.3d 519, 524–25 (5th Cir. 2002). "Such motions are collateral to the merits, so the appeal does not divest the district court of jurisdiction." *Id.*

**DISCUSSION**

**I.        Legal Standard**

Reasonable attorneys' fees are calculated by the Court using three steps: (1) determine the nature and extent of the services provided by counsel; (2) set a value on those services according to the customary fee and quality of the legal work; and (3) adjust the compensation based on the other *Johnson* factors that may be of significance in the particular case. *Copper Liquor, Inc. v. Adolph Coors Co.*, 684 F.2d 1087, 1092 (5th Cir. 1982); *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974).

"The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). This is known as the "lodestar" amount and is derived from step one and two of the reasonable attorney fee calculation. Both the hours worked and the hourly rate must be reasonable, and the Court considers only the hours spent on successful claims. *See id*. at 433–34.

The third step of the reasonable attorney fee calculation is reserved for the adjustment of the lodestar using the twelve *Johnson* factors. The *Johnson* factors are:

> (1) the time and labor required; (2) the novelty and difficulty of the legal questions; (3) the requisite skill to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee for similar work in the community; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Johnson*, 488 F.2d at 717–19. Rarely are all factors applicable, and they may be assigned different weights.

**II.    Analysis**

Plaintiff seeks $674,773.00 in attorneys' fees, based on a total of 1,937.5 reported hours of work relating to the litigation.

| Firm | Attorney | Requested hourly rate | Hours worked | Total amount billed |
|---|---|---|---|---|
| The Packard Firm | Daniel Packard | $450.00 | 225.0 | $101,250.00 |
| | Legal Assistant | $100.00 | 142.0 | $14,200.00 |
| The Jones Firm | Paul Jones | $450.00 | 725.1 | $326,295.00 |
| | Brian Jones | $320.00 | 575.4 | $184,128.00 |
| Khavari & Moghadassi | Rod Khavari | $225.00 | 191.0 | $42,975.00 |
| | Legal Assistant | $75.00 | 79.0 | $5,925.00 |
| | **Total** | | **1937.5** | **$674,773.00** |

*See* ECF No. 129-6. In support of this lodestar amount, Plaintiff submits declarations from each law firm, describing the experience of the professionals from their firm who worked on the case and attaching contemporaneous time records that have been adjusted to reflect counsel's billing judgment. *See* ECF No. 129-2 (Packard Decl.); ECF No. 129-3 (Jones Decl.); ECF No. 129-4 (Khavari Decl.). The Jones Firm has also provided an affidavit of another civil rights attorney practicing in San Antonio, Edward L. Piña, in support of their hourly rates. *See* ECF No. 131-1.

Defendants argue that this lodestar amount is unreasonable and seek: (1) a 50% reduction based on Plaintiff's partial success, (2) a 20% reduction for lack of billing judgment, and (3) a 75% reduction for excessive co-counsel communications billing. *See* ECF No. 132. They further assert the that reasonable hourly rates for civil rights cases in San Antonio range from $325 to $350 per hour. *Id.* at 5. In reply, Plaintiff's counsel offered an additional 10% reduction of time billed by the Jones Firm. *See* ECF No. 136 at 5.

### A.    Reasonable Hours Billed

While a fee applicant "must, of course, submit appropriate documentation to meet 'the burden of establishing entitlement to an award,'" the Supreme Court has cautioned that "trial courts need not, and indeed should not, become green-eyeshade accountants." *Fox v. Vice*, 563 U.S. 826, 838 (2011) (quoting *Hensley*, 461 U.S. at 437). Instead:

> The essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection. So trial courts may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time. And appellate courts must give substantial deference to these determinations, in light of the district court's superior understanding of the litigation. We can hardly think of a sphere of judicial decisionmaking in which appellate micromanagement has less to recommend it.

*Id.* (cleaned up). With that guidance in mind, the Court considers whether Plaintiff's degree of success, counsels' billing judgment, and duplication of effort warrant a downward adjustment.

### 1.    Degree of Success

"Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee." *Hensley*, 461 U.S. at 435. The success of a prevailing party's attorneys is critical in determining whether hours expended on the matter were reasonable. *See id.* When hours spent on various claims cannot be disentangled, however, the court's focus should shift to adjustments for results obtained. *La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 327 (5th Cir. 1995); *see also Abell v. Potomac Ins. Co.*, 946 F.2d 1160, 1169 (5th Cir. 1991) ("[W]here time spent on unsuccessful issues is difficult to segregate, no reduction of fees is required."); *Kinsel v. Lindsey*, 526 S.W.3d 411, 427 (Tex. 2017) (Segregation between recoverable and non-recoverable claims is not necessary "when the fees are based on claims arising out of the same transaction that are so intertwined and inseparable as to make segregation impossible.").

Defendants urge the Court to reduce the fee award in this case by 50% based on Plaintiff's minimal degree of success. ECF No. 132 at 7. For example, Plaintiff failed on multiple claims and motions: (1) his summary judgment motion on reasonable suspicion was denied, 662 F. Supp. 3d at 719–22; (2) his unlawful seizure claims were dismissed on qualified immunity, *id.*; (3) his prolonged arrest claim was dismissed by the Fifth Circuit, 2024 WL 1580175, at *5; (4) his claim for excessive force based on being extracted from the truck was dismissed under Rule 50; and (5) the jury found no liability against Officer Kory on failure to intervene or unreasonable search, *see* ECF Nos. 127, 128.

This argument ignores the fact that the successful claims—pointing a gun at Plaintiff's head—and the unsuccessful claims—e.g., unlawful seizure, prolonged seizure, excessive force based on Plaintiff's extraction from the truck—were a part of the same transaction, involving the same witnesses, and many of the same legal standards. For example, reasonable suspicion is a part of the *Graham* factors. *See Graham v. Connor*, 490 U.S. 386, 397 (1989). Thus, while counsel has deducted time spent on Plaintiff's unsuccessful motion for partial summary judgment on reasonable suspicion, discovery and briefing bearing on reasonable suspicion was relevant to, *e.g.*, whether it was reasonable to point a gun at Plaintiff's head, a claim on which he ultimately prevailed. Similarly, as to hours billed, there was no way to isolate King's pointing his gun at Plaintiff's head from the other aspects of Plaintiff's extraction from the truck because the same video, documentation and witnesses had to be addressed before and during trial. Finally, that the jury did not find Kory personally liable for Plaintiff's damages does not render the hours spent taking her deposition, reviewing her body camera footage, and calling her as a witness futile, since she was nevertheless a key witness.

While Plaintiff was clearly not successful on all of his claims, it appears that much of the work performed was reasonably expended at the time it was performed and perhaps even necessary to Plaintiff's ultimate success. *Grant v. Martinez*, 973 F.2d 96, 99 (2d Cir. 1992). Any attempt to disentangle hours spent on unsuccessful claims would require too much speculation and conjecture by the Court. Thus, "the appropriate stage at which to consider a fee reduction in light of [Plaintiff's recovery] is in making *Johnson* factor adjustments, and not through reducing the hours reasonably expended" on each of those claims. *Roussel v. Brinker Int'l, Inc.*, No. H-05-3733, 2010 WL1881898, at *1 (S.D. Tex. Jan. 13, 2010).

Accordingly, the Court makes no adjustment to the hours expended by Plaintiff's counsel in achieving this success.

### 2.    Billing Judgment

In determining the number of hours the attorneys reasonably worked, the district court should not include hours that are improperly documented, redundant, or excessive. *McClain v. Lufkin Indus., Inc.*, 649 F.3d 374, 381 (5th Cir. 2011) (citing *Watkins v. Fordice*, 7 F.3d 453, 457 (5th Cir. 1993)). To determine whether hours are reasonable, the district court must consider whether "at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures." *Grant*, 973 F.2d at 99.

The prevailing party also bears the burden of showing the proper use of "billing judgment," or the process by which attorneys write off duplicative, unproductive, or excessive hours. *Walker v. U.S. Dep't of Housing & Urb. Dev.*, 99 F.3d 761, 769 (5th Cir. 1996). To prove proper billing judgment was used, the prevailing party must show documentation of both hours charged and hours written off. *Saizan v. Delta Concrete Prod. Co.*, 448 F.3d 795, 799 (5th Cir. 2006). Absent documentation showing the proper use of billing judgment, the district court should reduce the

attorneys' fees awarded by "a percentage intended to substitute for the exercise of billing judgment." *Id.* Fifth Circuit precedent dictates that a 10% reduction of the lodestar amount will remedy a party's failure to include evidence of the use of billing judgment. *Id.* at 800.

Defendants do not appear to challenge the billing judgment of Mr. Packard or Mr. Khavari. *See* ECF No. 132 at 7–9. As to the Jones Firm, Defendants seek a 20% reduction in hours and the exclusion of specific categories of time billed (totaling $27,521). These categories include:

1.  **Monell Research ($1,888):** Time billed for *Monell* legal research despite never suing the City of San Antonio or asserting a *Monell* claim. ECF No. 132 at 7. Plaintiff concedes approximately three hours should be removed work on the *Monell* claim. ECF No. 136 at 4.

2.  **Motion for Summary Judgment on Reasonable Suspicion ($9,473):** Research and drafting for Plaintiff's motion for partial summary judgment on reasonable suspicion, which was denied. ECF No. 132 at 7. Plaintiff responds that 52.2 hours were already deducted for the failed summary judgment motion. ECF No. 136 at 3–4 (citing ECF No. 129-3 at 3).

3.  **Excessive Force Claim - Physical Extraction from Vehicle ($4,896):** Research on excessive force claim pertaining to physical extraction from the truck, dismissed under Rule 50. ECF No. 132 at 8.

4.  **Unlawful Arrest Claims ($4,160):** Work on unlawful arrest claims dismissed by this Court and affirmed by the Fifth Circuit. ECF No. 132 at 8. Plaintiff concedes that less than 2 hours of illegal seizure work may be removable. ECF No. 136 at 4.

5.  **Amended Complaints ($6,656):** First and Second Amended Complaints that "simply assert the same claims against the same defendants as contained in Plaintiff's Original Complaint." ECF No. 132 at 8–9. Plaintiff does not address this objection. *See generally* ECF No. 136.

Given that the hours spent on Plaintiff's unsuccessful motion for partial summary judgment (totaling $9,473) have already been deducted, the Jones's offer to globally reduce their hours by 10% (i.e., $45,938.07), *see* ECF No. 136 at 5, more than covers the $18,048 of outstanding improper billing described in Defendants' response and any additional deficits in billing judgment.

8

Accordingly, the Court will reduce the hours billed by Paul Jones and Brian Jones by 10% each, to 653.6 hours and 517.9 hours, respectively. *See Saizan*, 448 F.3d at 800.

### 3. Duplication of Efforts and Excessive Communication

Plaintiff seeks attorneys' fees for 1,937.5 hours of legal work. ECF No. 129-6. Defendants assert that these hours should be reduced by 75% because this matter, which they characterize as a "run-of-the-mill civil rights case," was prosecuted by four attorneys and three paralegals. *See* ECF No. 132 at 10. (citing *Smith v. Xerox Corp.*, No. 3:06-CV-1213-N, 2008 WL 11422638, at *2 (N.D. Tex. May 13, 2008) (reducing fees by nearly 80% based on partial success and duplication of efforts where plaintiff "hired five attorneys (four of whom were partners) and two paralegals to handle what was essentially a run-of-the-mill employment discrimination case")).

Time that is "excessive, duplicative, or inadequately documented" should be excluded by the Court when calculating lodestar. *Watkins*, 7 F.3d at 457. While duplication of effort is not *per se* unreasonable, *Base Metal Trading, Ltd. v. OJSC Novokuzketsky Aluminum Factory*, 31 F. App'x 159 (5th Cir. 2001), "[i]f more than one attorney is involved, the possibility of duplication of effort along with the proper utilization of time should be scrutinized. The time of two or three lawyers in a courtroom or conference when one would do, may obviously be discounted." *Walker*, 99 F.3d at 768. As the Fifth Circuit noted in *Base Metal Trading*:

> This rule . . . is permissive and not mandatory. Its permissiveness reflects the broad discretion that district courts have in assessing attorneys' fees. The only mandate placed upon the district court is to determine "whether particular hours claimed were reasonably expended." Thus, a district court is not required to discount the time of two or three lawyers when one would do if the court determines that there was a legitimate reason to use more than one.

31 F. App'x at 159 (quoting *Alberti v. Klevenhagen*, 896 F.2d 927, 932 (5th Cir. 1990)).

9

To begin, Defendants' own litigation strategy undermines their position that this is a "run-of-the-mill civil rights case," given their unsuccessful appeal of the Court's summary judgment order and subsequent appeal of the jury verdict and the Court's orders denying Defendants' motions for judgment as a matter of law and a new trial. Indeed, this case has been hotly contested for almost seven years, involving extensive discovery, multiple summary judgment motions and qualified immunity decisions, mediation, a three-day jury trial, and two appeals to the Fifth Circuit. Over the course of this case, Plaintiff made multiple settlement offers to facilitate early resolution. The mediator's proposal, which Defendants rejected, was approximately the same as the amount awarded by the jury. Defendants were, of course, entitled to vigorously defend this case, but the Court will not reduce Plaintiff's fee award based on Defendants' aggressive litigation strategy.

Moreover, considering the procedural complexity of the case, it was not unreasonable that, in the end, Plaintiff engaged multiple attorneys to prosecute this case. As to the retention of Mr. Packard, as lead trial counsel, the Court observes that the Jones attorneys sought co-counsel in their first federal jury trial in accordance with their ethical obligations under Rule 1.01 of the Texas Disciplinary Rules of Professional Conduct,[2] "Competent and Diligent Representation":

> A lawyer shall not accept or continue employment in a legal matter which the lawyer knows or should know is beyond the lawyer's competence, unless . . . another lawyer who is competent to handle the matter is, with the prior informed consent of the client, associated in the matter[.]

The Court will not penalize the Joneses for satisfying their ethical obligations.

Further, the decision to have Paul Jones serve as second chair at trial was reasonable, given his greater familiarity with the pretrial matters in this case and the fact that Mr. Packard did not join the case until it had been pending for nearly four years. Indeed, as Plaintiff points out,

---

[2] The Western District of Texas has adopted the standards of professional conduct set forth in the Texas Disciplinary Rules of Professional Conduct, Texas Government Code, Title 2, Subtitle G, App. A, art. X, sec. 9 (Vernon). *See* W.D. Tex. Local Rule AT-7(a).

"Defendants that had three attorneys defending them throughout trial. They should not be allowed to successfully argue that it took three lawyers to defend the case, but that it was unreasonable for Plaintiff to have more than one trial counsel." ECF No. 136 at 4. The Court agrees.

Still, Defendants characterize certain tasks, including communications between co-counsel, "open records requests, demand letters, legal research, drafting of the complaints, designation of plaintiff's expert, and trial preparation" as duplicative. ECF No. 132 at 10–11. The Court must scrutinize whether Plaintiff's counsel engaged in unnecessarily duplicative work and whether the overall time billed to these tasks was unreasonable. *Walker*, 99 F.3d at 768.

Addressing the 78.7 hours of co-counsel communication billed by the Jones Firm between 2018 and 2025 (totaling $35,415), Plaintiff points out that many more hours "were already reduced when Paul and Brian were on speakerphone together" and that, "divided among three lawyers over seven years, [the total represents] only 3.7 hours of billed communication time per year per lawyer. This is not excessive." ECF No. 136 at 4. The Court agrees. *Cf. Gros v. New Orleans City*, No. CIV.A. 12-2322, 2014 WL 2506464, at *11 (E.D. La. June 3, 2014) (imposing 75% reduction of nearly 90 hours billed for co-counsel communications over a period of approximately one year).

In drafting submissions to the Court, given the nature of the joint representation, Rule 11 constitutes a legitimate reason for review by each of the attorneys. Each strategic decision and filing required coordination and approval by two or three different firms. *Cf. Lowery v. Cash's Cabanas, Inc.*, No. 3:08-CV-186-MCR-MD, 2011 WL 674800 (N.D. Fla. Feb. 16, 2011) (reducing fee by 60% where nearly *every* piece of evidence was reviewed by at least two lawyers and a paralegal). Similarly, while Defendants object to allegedly duplicative meetings between Plaintiff's counsel and police experts, the record shows that Mr. Khavari and the Joneses met with experts in 2021—when they were identifying, retaining, and designating those experts—and Mr.

11

Packard met with the testifying expert witnesses before trial in early 2025. *See* ECF No. 129-3 at 32–46 (Jones); ECF No. 129-2 at 4 (Packard). It is unsurprising that counsel engaged with expert witnesses on multiple occasions for these separate purposes over the course of the litigation.

To the extent that Mr. Khavari's efforts as to open records requests, demand letters, legal research, and trial requests are in some way duplicative of the Joneses', the 10% reduction in Paul and Brian Jones's hours—representing 72.5 hours and 57.5 hours, respectively—easily addresses any duplication of efforts. For example, in October 2018, Mr. Khavari billed 30 minutes of purportedly redundant time on Plaintiff's demand letter, ECF No. 129-4 at 4, while the Jones Firm spent about 3.6 hours, ECF No. 129-3 at 9–10. Between September 2018 and February 2019, Mr. Khavari spent 11 hours on Plaintiff's open records request, *see* ECF No. 129-4 at 4, while the Jones Firm spent about 2 hours of purportedly duplicative time, *see* ECF No. 129-3 at 9–11. Again, "[t]he essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection." *Fox*, 563 U.S. at 838. Therefore, the Court finds no basis for discounting work as duplicative.

Still, the Court observes that many of Mr. Khavari's narratives are vague or include block billing. *See, e.g.*, ECF No. 129-4 at 12 ("Legal Research"); *id.* ("Research re: Mens Rea issue surrounding Resisting Arrest; Tel. Conf. with OC; finalized the draft of the Settlemen[t]"). Moreover, the formatting of his timesheets—in which the date and time of his work on the cases and the narrative describing the work are separated by several pages—make it difficult to discern how long Mr. Khavari spent on a given task. *See id.* at 4–14.

This jurisdiction has reduced attorneys' fees by a percentage due to the inconvenience imposed on determining reasonableness of hours through the use of block billing. *See Chacon v. City of Austin*, No. A-12-CA-226-SS, 2015 WL 4138361, at *6 (W.D. Tex. July 8, 2015) (reducing

12

the total number of hours used in the lodestar calculation by 10% due to the use of block billing). Block billing does not *require* a reduction in hours or fees as long as the documentation provided is sufficient to determine whether the hours are reasonable. *Kellstrom*, 50 F.3d at 325 (citing *Heasley v. Commissioner*, 967 F.2d 116, 123 (5th Cir. 1992)). The district court may also remove hours used in the lodestar calculation when the documentation supporting those hours is "too vague to permit meaningful review." *Kellstrom*, 50 F.3d at 326 (citing *Leroy v. City of Houston*, 906 F.2d 1068, 1080 (5th Cir. 1990)).[3] In deferring to the district court's discretion, the court in *Kellstrom* noted the lack of a clear standard for determining whether a billing description is too vague as well as the district court's familiarity with the attorneys' work. Further, the court acknowledged practical limitations "preclude 'writing a book' to describe in excruciating detail the professional services rendered for each hour or fraction of an hour." *Id.* at 326–27. Here, the Court finds a 10% reduction of Mr. Khavari's hours is appropriate to account for the vagueness of certain entries, his use of block billing, and the Court's difficulty in determining whether his hours were reasonable, along with any duplication of efforts.

### B.    Reasonable Hourly Rates

To calculate the appropriate hourly rate for application of the lodestar method, courts determine "an appropriate hourly rate in the community for such work." *Tollett v. City of Kemah*, 285 F.3d 357, 367 (5th Cir. 2002) (emphasis removed). The market rate for comparable service by lawyers of similar experience, skill, and reputation is considered the prevailing rate for the purposes of the lodestar calculation. *McClain*, 649 F.3d at 381 (citing *Blum v. Stenson*, 465 U.S. 886, 889 (1984)). The relevant market for the purpose of determining the prevailing rate to be used

---

[3] In *Leroy*, the Fifth Circuit struck hours billed for "work on brief," "continue work on brief," and "review for oral argument." *Leroy*, 906 F.2d at 1080. In *Kellstrom*, the Fifth Circuit reduced fees for hours with billing descriptions such as "revise memorandum," "review pleadings," "review documents," and "correspondence." *Kellstrom*, 50 F.3d at 326 n.11.

in the lodestar calculation is the market in which the district court sits. *Tollett*, 285 F.3d at 368 (citing *Scham*, 148 F.3d at 558); *Blum*, 465 U.S. at 895 n.11. Generally, the reasonable hourly rate for a particular community is established through affidavits of other attorneys practicing there. *See, e.g., Watkins,* 7 F.3d at 458 (party seeking fees submitted "affidavits from other attorneys in the community showing the prevailing market rates in the locality").

Defendants contend that the requested hourly rate of $450 for Daniel Packard and Paul Jones is too high.[4] ECF No. 132 at 5. In support of this proposed rate, Mr. Packard and Mr. Jones submit attorney declarations describing each attorney's experience and normal hourly rates. *See* ECF No. 129-2 (Packard Decl.); ECF No. 129-3 (Jones Decl.). Mr. Packard has been practicing law for over 30 years, with an emphasis in personal injury and civil rights cases, and has served as lead counsel in more than 50 cases tried to a jury in both state and federal court. *See* Packard Decl. at 1. Mr. Jones has approximately 20 years of experience, in a wide range of practice areas, including cases brought under 42 U.S.C. § 1983 and other civil rights statutes. *See* Jones Decl. at 1–2. While both attorneys typically work on contingency, when they charge an hourly rate, they bill $500 per hour. *See id.*; Packard Decl. at 1. As further evidence that the requested rate is reasonable, Plaintiff proffers an affidavit of another civil rights attorney practicing in San Antonio, Edward L. Piña. *See* ECF No. 131-1 (attesting that $450 per hour is consistent with rates charged and awarded in San Antonio civil rights cases and his own hourly rate).

Defendants insist that reasonable hourly rates for civil rights cases in San Antonio range from $325 to $350 per hour. ECF No. 132 at 5. Here, Defendants rely on (1) the 2019 Income and Hourly Rates summary published by the State Bar of Texas, reflecting a median hourly rate of

---

[4] While Defendants purport to object to Brian Jones's rate, *see* ECF No. 132 at 6, his requested hourly rate ($320) falls below the range Defendants propose as reasonable ($325–350 per hour). *See id.* at 5. Accordingly, the Court considers any objection to Brian Jones's rate to be waived.

$285 in San Antonio, and (2) cases analyzing fee requests based on the 2019 summary and the State Bar of Texas Department of Research & Analysis 2015 Hourly Fact Sheet. *Id.*[5] But the Fifth Circuit has recognized "the Fact Sheet's probative limitations." *Alvarez v. McCarthy*, No. 20-50465, 2022 WL 822178, at *5 (5th Cir. Mar. 18, 2022) (per curiam) (leaving it within courts' discretion to consider the Fact Sheet as "a useful 'baseline' for calculating a reasonable hourly rate"). And even the Texas Bar has warned against using its Fact Sheet and hourly rate summary to set attorney fees.[6] In any event, more recent fee awards in civil rights cases establish that the prevailing rates in Texas are higher than those recommended by Defendants.[7] *See, e.g.*, *Johnson v. Sw. Rsch. Inst.*, No. 5:15-297, 2019 WL 4003106, at *7 (W.D. Tex. Aug. 23, 2019) (approving hourly rate of $585 in a Title VII case).

While Mr. Packard and Paul Jones's requested hourly rates are reasonable in civil rights cases generally, the Court considers whether, as Defendants suggest, Paul Jones's lack of federal trial experience warrants a reduction of his hourly rate for the time spent at trial.[8] The Court declines to reduce Paul Jones's rate on this basis, for at least three reasons.

---

[5] *See Segovia v. Fuelco Energy LLC*, No. SA-17-CV-1246-JKP, 2024 WL 1161730, at*4 (W.D. Tex. March 18, 2024) (relying on 2015 Fact Sheet and finding that $350 hourly rate rather than $500 hourly rate to be reasonable in FLSA case); *West v. Zedric's LLC*, 2019 WL 6522828 (W.D. Tex. Dec. 3, 2019) (finding that $325 hourly rate rather than $500 hourly rate to be reasonable in FLSA case); *Doe v. Neal*, No. 5:14-CV-102-XR, 2015 WL 4508335 (W.D. Tex. July 24, 2015) (finding that $350 hourly rate to be reasonable in a civil rights excessive force case).

[6] *See Diocesan Migrant & Refugee Servs., Inc. v. U.S. Immigr. & Customs Enf't*, No. EP-19-CV-00236-FM, 2021 WL 289548, at *12 (W.D. Tex. Jan. 28, 2021); *Demographic & Economic Trends*, State Bar of Texas, https://perma.cc/WNG4-XACM ("[H]ourly rate information is no longer collected. Past hourly rate reports were not designed for nor intended to be used for setting appropriate attorney fees. Other factors should be considered in determining attorney hourly rate fees that are outside the scope of these reports.").

[7] Many of Plaintiff's citations to higher hourly rates are simply inapposite insofar as they concern a different area of law or out-of-district attorneys. *See Loy v. Rehab Synergies, LLC*, No. 7:18-cv-4, 2023 WL 11915714 (S.D. Tex. Nov. 9, 2023) (approving $600 per hour); *United States ex rel. Cook-Reska v. Cmty. Health Sys., Inc.*, No. H-09-1565, 2015 WL 3386153 (S.D. Tex. May 4, 2015) (approving $550 per hour); *United States ex rel. Liotine v. CDW-Government, Inc.*, No. 3:05-cv-33-DRH-PMF, 2013 WL 5366960, at *2–3 (S.D. Ill. Sept. 25, 2013) (approving $550–600 per hour).

[8] *See* ECF No. 132 at 5 (noting a May 20, 2024 timeslip entry indicating that the Jones Law Firm contacted six federal trial attorneys before ultimately engaging Mr. Packard as lead trial counsel in July 2024); ECF No. 129-3 at 82 ("Research on experienced trial attorneys for Federal Civil Right[s] cases. Brian and I have no experience in Federal trial work. Found 6 different attorneys and called all 6.").

First, while he lacked trial experience in federal court, one can hardly argue with the *pretrial* results he achieved in federal court. Without those early successes, the case would never have reached trial.

Second, as the Court has already explained, the Jones attorneys sought co-counsel in their first federal jury trial in accordance with their ethical obligations. And, again, Paul Jones was a reasonable choice to second chair the trial, given his familiarity with the pretrial matters in this case and Mr. Packard's relatively late engagement.

Third, although Brian Jones prepared the trial outline and attended the entire jury trial, he does not seek compensation for any of his trial work—nor did Mr. Khavari. *See* ECF No. 129 at 9. Thus, as a practical matter, writing off Brian Jones's hours entirely operates on average as a 40% rate reduction for *both* Paul and Brian Jones. In other words, accounting for Jones Firm's collective contributions, each trial hour for which Paul Jones billed $500 could be fairly allocated to Paul at $300 per hour and Brian at $200 per hour (60% of their normal rates). No further adjustment is warranted.

Accordingly, all of the hourly rates requested by Plaintiff's counsel are approved.

### C.    *Johnson* Factors

Next, this Court must consider whether the *Johnson* factors warrant adjusting the lodestar amount of $628,834.93. Defendants argue that *Johnson* factors require at least a 50% decrease in the lodestar considering Plaintiff's partial and limited success and a jury verdict of $265,000. ECF No. 132 at 6. Plaintiff does not seek an upward adjustment of the lodestar but maintain that the lodestar should not be reduced in light of the difficulty of the legal issues involved, the undesirability of the case, their contingency fee, and their preclusion from taking other cases while working on this litigation. ECF No. 129 at 5–7.

The Court may not reconsider factors it used in determining the appropriate lodestar, as the *Johnson* factors are intended to complement the lodestar. *Black*, 732 F.2d at 502–03. The lodestar should be adjusted based on the *Johnson* factors "only in exceptional cases." *Watkins*, 7 F.3d at 457. The lodestar calculation has already accounted for factors such as the time and labor required and the experience, reputation, and ability of the attorneys. The parties also appear to agree that several of the *Johnson* factors are not relevant here. Plaintiff acknowledges that no time limitations were imposed by the client or the circumstances and do not argue that the length and nature of the professional relationship with their clients warrants any adjustment. *See* ECF No. 129 at 6–7. Thus, the Court makes findings concerning only a few relevant *Johnson* factors, as follows.

As to the jury award, both the Supreme Court and the Fifth Circuit have explicitly rejected the notion that an award of attorneys' fees must be "proportional" to the damages awarded to a successful plaintiff, however. *See City of Riverside v. Rivera*, 477 U.S. 561, 578 (1986); *Combs v. City of Huntington*, 829 F.3d 388, 396 (5th Cir. 2016) (noting that the Fifth Circuit "ha[s] consistently emphasized that 'there is no per se requirement of proportionality in an award of attorney fees.'" (quoting *Branch-Hines v. Hebert*, 939 F.2d 1311, 1322 (5th Cir. 1991))); *see also Saizan*, 448 F.3d at 799 (noting that while "the most critical factor in determining an attorney's fee award is the degree of success obtained," a low damages award alone "should not lead the court to reduce a fee award").

While the Court acknowledges that Plaintiff prevailed on a minority of his claims, that degree of success does not warrant a further downward adjustment of the lodestar when weighed against the risks Plaintiff's counsel undertook in accepting this case. Plaintiff's counsel has proceeded on a contingency-fee basis, risking that they would never be compensated for their work on this case. Plaintiff's counsel further assert that they were precluded from accepting other

17

employment by accepting this case. ECF No. 129 at 6. Counsel as not offered any evidence of work that they turned down due to this litigation, but the Court does not doubt, based on the size of the firms involved and hours billed to this matter, that Plaintiff's counsel had a limited capacity for additional work. Given the risk that Plaintiff's counsel would receive little to no compensation for their work in this case, they had no incentive to run up the clock by billing for unnecessary tasks.

Accordingly, the Court will not further adjust the lodestar amount based on the degree of success. The remainder of the factors have either been considered in the lodestar calculation or are neutral. "[I]t is not necessary for a district court to examine each of the [*Johnson*] factors independently if it is apparent that the court has arrived at a just compensation based upon appropriate standards." *Sanders v. Barnhart*, No. 04-10600, 2005 WL 2285403, at *2 (5th Cir. Sept. 19, 2005). In short, the Court will not adjust the fee award based on the *Johnson* factors.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for attorneys' fees (ECF No. 129) is **GRANTED IN PART** and **DENIED IN PART**.

Plaintiff is awarded $572,902.63 in attorneys' fees, representing $115,450.00 in attorney and legal assistance fees for The Packard Firm, $413,442.63 in attorneys' fees for The Jones Firm, and $44,010.00 in attorney and legal assistance fees for Khavari & Moghadassi.

It is so **ORDERED**.

**SIGNED** this 23rd day of April, 2026.

XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE

18